LOUIS A. WYATT, D.C., *et al.*, Plaintiffs-Appellees, *v.* JERRY DISHONG, D.C., Defendant-Appellant.

Fifth District   No. 5—83—0758

Opinion filed August 7, 1984.—Rehearing denied September 17, 1984.

KARNS, J., dissenting.

Guy E. McGaughey, Jr., of McGaughey & McGaughey, of Lawrenceville (William C. Bowen and Ray Vaughn, of counsel), for appellant.

Ray Fehrenbacher and Gary E. Milone, both of Fehrenbacher Law Offices, of Olney, for appellees.

PRESIDING JUSTICE WELCH delivered the opinion of the court:

The parties to this litigation are engaged in the practice of chiropractic in Olney. Defendant Jerry Dishong was associated with plaintiffs Louis A. Wyatt and Wyatt Chiropractic Clinic, Ltd. (Wyatt Clinic). In late September and early October 1983, the defendant left that employment and opened his own office. The plaintiffs then sought injunctive relief in the circuit court of Richland County, based on a covenant not to compete in defendant's employment contract. The court granted a preliminary injunction preventing the defendant from practicing as a chiropractor within 10 miles of Olney. The defendant appeals.

In requesting a preliminary injunction, the plaintiffs must prove that (1) they possess a certain and clearly ascertained right that needed protection, (2) they would suffer irreparable injury without such protection, (3) they have no adequate remedy at law, and (4) they are likely to prevail on the merits. (*Akhter v. Shah* (1983), 119 Ill. App. 3d 131, 134, 456 N.E.2d 232, 235.) The trial court's findings on each of these issues will not be disturbed absent an abuse of discretion. (*Booth v. Greber* (1977), 48 Ill. App. 3d 213, 363 N.E.2d 6.) Despite defendant's contentions to the contrary, the threatened loss of plaintiffs' patients is an irreparable injury preventable by an injunction. (*Cockerill v. Wilson* (1972), 51 Ill. 2d 179, 281 N.E.2d 648.) This dispute thus concerns only whether the plaintiffs are likely to prevail on the merits.

Plaintiff Wyatt set up his chiropractic practice in Olney in 1961. The defendant worked for him between 1969 and 1973. Although the

defendant had completed his chiropractic training by then, he had not become licensed in Illinois and was limited to performing such tasks as taking X rays. The defendant moved to Louisiana in 1973, where he associated with an acupuncturist. He obtained licenses to practice chiropractic in Illinois and Louisiana while a resident of Louisiana.

Dr. Wyatt contacted the defendant in Louisiana about returning to Olney and associating with him. They discussed the terms of their agreement. The defendant recalled that Dr. Wyatt had promised him a 70%-30% division of the fees generated by him. Dr. Wyatt stated that he had discussed all aspects of the prospective agreement with the defendant, but he was not certain whether he had specifically mentioned the necessity for a covenant not to compete. He did not contend that he promised the defendant a 70%-30% partnership.

The defendant returned to Olney in October 1976 and began to practice in the Wyatt Clinic without a written contract. Dr. Wyatt indicated that the defendant was paid on a 50%-50% basis during that time. The parties finally signed a contract on August 4, 1977. Under the contract, the defendant was to pay Dr. Wyatt $200 plus 50% of his weekly receipts. The agreement was terminable by the defendant or Dr. Wyatt with 30 days' notice to the other party. Upon termination of the agreement by either party, the defendant would be prohibited from engaging in the practice of chiropractic within 50 miles of Olney for a period of five years. That provision stated that if those time and space restrictions were held invalid by a court, then those restrictions would be revised to include the "maximum reasonable restrictions" allowed under Illinois law.

After the contract was entered into, the compensation of the defendant was changed three times. In 1978, at the request of the defendant, Dr. Wyatt waived the $200 weekly payment. In 1981, the defendant's share of X ray and therapy income was cut from 50% to 10%. According to Dr. Wyatt, this change was necessitated by the rising price of X-ray film. Finally, beginning in 1983, the defendant received 25% of each fee paid by any patient of Dr. Wyatt's who was treated by the defendant. He had previously received 50% of those fees.

In February 1983, Dr. Wyatt brought in a new associate, Dr. Hughes. He did not discuss the employment of Dr. Hughes with the defendant. Dr. Wyatt and his receptionist, Florence Redman, were of the opinion that the presence of Dr. Hughes did not reduce the defendant's compensation because Dr. Hughes' caseload was small. The defendant disagreed. It is undisputed, though, that Dr. Wyatt referred his patients to Dr. Hughes when he went on vacation.

■ The defendant advances four reasons why the covenant not to compete is unenforceable against him. First, he describes that clause as adhesive, relying upon *American Food Management, Inc. v. Henson* (1982), 105 Ill. App. 3d 141, 434 N.E.2d 59. In *Henson*, the defendant relocated to accept employment with the plaintiff without knowing that he would have to sign a covenant not to compete. He was later required to sign an employment contract containing such a covenant. This court held that clause unenforceable because of the disparity of bargaining power between the individual defendant and the multistate corporate plaintiff, and because of the defendant's ignorance of the covenant before he relocated. Here, however, both individuals who signed the contract are health care professionals with advanced degrees, and it is not obvious, as it was in *Henson*, that the covenant was not mentioned before the defendant moved to accept employment. We do not find the covenant adhesive in these circumstances.

■ Next, the defendant argues that the temporal and spatial limitations in the covenant are so unreasonable as to render it merely an attempt to restrain competition. He asserts that we should judge the restrictions in the contract itself, not in the court's order, and if they are unreasonable, we should strike the clause rather than rewrite it. (*House of Vision, Inc. v. Hiyane* (1967), 37 Ill. 2d 32, 225 N.E.2d 21; *L & R Insurance Agency, Inc. v. McPhail* (1968), 92 Ill. App. 2d 107, 235 N.E.2d 153.) The fairness of the restraint initially imposed is a relevant consideration (*Barrington Trucking Co. v. Casey* (1969), 117 Ill. App. 2d 151, 253 N.E.2d 36), but it is much less important where, as here, the covenant specifically allows a court to modify its limits if the original restrictions are too broad. In comparison to other restrictions upheld in Illinois in contracts between practitioners of analogous professions, the 5-year, 10-mile restriction enforced by the trial court is eminently reasonable. (*Cockerill v. Wilson* (1972), 51 Ill. 2d 179, 281 N.E.2d 648; *Canfield v. Spear* (1969), 44 Ill. 2d 49, 254 N.E.2d 433; *Bauer v. Sawyer* (1956), 8 Ill. 2d 351, 134 N.E.2d 329; *Field Surgical Associates, Ltd. v. Shadab* (1978), 59 Ill. App. 3d 991, 376 N.E.2d 660.) The fact that the defendant was hired for an indefinite period of time and was thus an employee at will does not make the restrictions unconscionable. The right to terminate an at-will employment relationship is subject to any termination provisions in the employment contract (*Criscione v. Sears, Roebuck & Co.* (1978), 66 Ill. App. 3d 664, 384 N.E.2d 91; *H. Vincent Allen & Associates, Inc. v. Weis* (1978), 63 Ill. App. 3d 285, 379 N.E.2d 765), including a covenant not to compete. Also, the restrictions are not inappropriate be-

cause 95% of the Wyatt Clinic's patients reside within 30 miles of it or because the defendant is a native of Olney. When he first associated with Dr. Wyatt in 1976, the defendant had not yet established a clientele, and the testimony shows that many of his current patients initially patronized him because of his employment at the clinic.

■■ ■ Next, the defendant insists that Dr. Wyatt's alteration of his compensation relieved him from the obligation to obey the restrictive covenant. His argument is premised on the principle that a party may terminate or rescind a contract because of substantial nonperformance or breach by the other party. (*Eager v. Berke* (1957), 11 Ill. 2d 50, 54, 142 N.E.2d 36, 38.) But, a contract terminable at the will of either party can be modified at any time by either party as a condition of its continuance. (*Garber v. Harris Trust & Savings Bank* (1982), 104 Ill. App. 3d 675, 682, 432 N.E.2d 1309, 1314.) The employment contract has therefore not been breached. Moreover, even construing the actions of Dr. Wyatt as a breach of the contract, the defendant would be excused from complying with the covenant only if there has been a nonperformance of duty that is so material and important as to justify the injured party in regarding the transaction at an end. (*C. G. Caster Co. v. Regan* (1980), 88 Ill. App. 3d 280, 285, 410 N.E.2d 422, 426.) The $200 weekly payment from the defendant to Dr. Wyatt, which was to defray X-ray expenses, was eliminated at the defendant's request. There is no indication that this benefit to the defendant was equalled or outweighed by the reduction of his share of X-ray income and fees from his treatment of Dr. Wyatt's patients. Although the defendant's income has decreased between 1981 and 1983, no testimony suggests that this was caused by the modification of the parties' agreement rather than, as Dr. Wyatt attested to, a loss of business at the clinic. Indeed, since Dr. Wyatt began to refer his patients to Dr. Hughes when he went on vacation, it seems unlikely that this change in compensation significantly affected the defendant's earnings. In any event, Dr. Wyatt's conduct, even if a detriment to the defendant, was not so substantial as to justify the defendant in treating the employment agreement at an end.

■■ Finally, the defendant claims that the oral modifications of the written contract rendered the entire agreement in violation of the Statute of Frauds (Ill. Rev. Stat. 1983, ch. 59, par. 1) because the covenant not to compete could not be performed within one year of the execution of the agreement. However, a covenant not to compete may be fully performed if the party bound by it dies within the year (*Hubbard v. Logsdon* (1978), 56 Ill. App. 3d 366, 372 N.E.2d 101; *Decker v. West* (1934), 273 Ill. App. 532), unlike a contract for employment for a

term of years, which is simply terminated by that event (*Gilliland v. Allstate Insurance Co.* (1979), 69 Ill. App. 3d 630, 388 N.E.2d 68). According to these authorities, a contract containing a covenant not to compete for a period longer than a year does not run afoul of the Statute of Frauds, while a contract containing a term of employment for such a period would do so. Thus, the contract at bar, even with its oral modifications, is not unenforceable under the Statute of Frauds.

For the foregoing reasons, we find that the circuit court of Richland County did not abuse its discretion in granting the injunctive relief requested by the plaintiffs. Its order must be affirmed.

Affirmed.

HARRISON, J., concurring.

KARNS, J., dissenting:

In my opinion the covenant is adhesive, a blatant attempt to restrain competition and unconscionable. As in *American Food Management, Inc. v. Henson* (1982), 105 Ill. App. 3d 141, 434 N.E.2d 59, defendant relocated from Louisiana to Illinois and became an at-will employee of plaintiff on an oral agreement. Defendant's salary was readjusted from time to time in any manner that plaintiff chose. It seems clear that there was no discussion of a restrictive covenant until the 1977 contract was signed, after defendant had moved to Illinois, and defendant's salary was further readjusted, to his disadvantage. But that contract gave him no protection; he could be terminated on 30 days' notice, and even though he had worked for plaintiff for 20 years, the covenant would prevent him from practicing his profession within 50 miles of Olney for five years. In 1983, without any consultation with defendant, plaintiff employed another chiropractor, Dr. Hughes, and referred patients to him, further reducing defendant's income. It is not apparent just what economic harm befell plaintiff, as business was so good that an additional employee was hired. In any event, lack of good faith in an employment relationship is of relevance in enforcement of restrictive covenants. *Rao v. Rao* (7th Cir. 1983), 718 F.2d 219.

The cases cited by the majority upholding the validity of similar restrictions by medical professions would appear to support the majority position; however, on analysis, they involve generally the negotiation of agreements among professionals, usually partners, of equal bargaining power in populous areas of the State. Defendant here was an at-will employee.

This appears to me to be a covenant designed to restrict competition of the kind that has been considered invalid as a restraint of trade against the public interest. See generally Note, 1978 U. Ill. L.F. 249, 251.