**BARRY GILBERG, LTD., Plaintiff,**

v.

**CRAFTEX CORPORATION, INC., Defendant.**

No. 85 C 5194.

United States District Court, N.D. Illinois, E.D. Eastern Division.

Jan. 7, 1987.

Abraham N. Goldman, Chicago, Ill., for plaintiff.

Michael T. Trucco, Lee Ann Russo, Coffield, Ungaretti, Harris & Slavin, Chicago, Ill., Larry W. Bridgesmith, Constangy, Brooks & Smith, Atlanta, Ga., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Barry Gilberg, Ltd. ("Gilberg"),[1] a sales representative for manufacturers of women's clothing, has brought this action for wrongful termination and breach of contract against defendant Craftex Creations, Inc. ("Craftex"), a women's clothing manufacturer. Currently before the Court is defendant Craftex's motion for summary judgment. For the reasons noted below, we grant that motion in part and deny that motion in part.

## I. UNCONTESTED FACTS

Barry Gilberg is the principal and sole shareholder of Gilberg, which was incorporated on April 1, 1980. Gilberg has been involved in the sales, merchandising and sales management in the women's apparel industry for over thirty years. Craftex is a manufacturer of women's intimate apparel and leisure wear, and its main office and warehouse are in New York, New York. Craftex has been engaged in the women's apparel business for fifty years.

At the time Gilberg began to represent Craftex's lines, Robert Cohen was vice-president of Craftex and Jack Cohen was vice-president in charge of sales and marketing. Robert and Jack Cohen are brothers who have been employed in the women's apparel industry through Craftex for over thirty years each.

In March 1980, Craftex and Gilberg entered into an oral agreement by which plaintiff agreed to exclusively represent goods manufactured by Craftex in the States of Illinois, Indiana, Wisconsin and Missouri. There was no written agreement between Craftex and Gilberg. The terms and conditions of the agreement between Craftex and Gilberg were orally expressed at a meeting between the parties in New York on or about March 21, 1980, and never reduced to writing. Gilberg and Craftex agreed that Gilberg would receive 6½% commission based on sales made to stores in Gilberg's territory for which Gilberg had sales responsibility. Also, Gilberg would receive 3% commission on all irregular and off price goods shipped into Gilberg's territory based on sales to stores for which Gilberg has had sales responsibility. Gilberg and Craftex agreed that Gilberg would pay his own expenses, including 75% of the rent on a showroom at the Apparel Center in Chicago, Illinois. Gilberg and Craftex agreed that Gilberg would be paid a draw against his commissions at a rate of $95,000 per year plus $3,000 travel allowance. Gilberg and Craftex agreed that initially Gilberg was to have managerial responsibility over JoAnne Bagley (sales representative in Michigan and Ohio) and Andrew Levin (sales representative in Kansas, Nebraska, North and South Dakota, Minnesota and Iowa). Gilberg was to receive a commission override for sales made by these sales representatives as compensation for his managerial oversight.

Gilberg was informed by Craftex that he would receive notice of shipments made to stores in his territory for which he was

---

1. For clarity purposes, we will refer to the corporation as Gilberg himself, as Gilberg was the sole shareholder and employee.

entitled to commissions and that there were five selling seasons annually.

Prior to employment, Gilberg and Craftex did not discuss whether and to what extent Gilberg would be charged for samples, whether Gilberg would receive commissions on reorders in his territory, whether Craftex would guarantee commissions on sales if Craftex shipping experience fell below 85%, the manner in which the parties would resolve disputes arising out of the relationship, or the duration of the relationship, how it might be terminated, or if notice before termination would be provided.

On April 1, 1980, shortly after the March meeting between Gilberg and Craftex, Barry Gilberg, Ltd. was incorporated.

Gilberg was paid for shipments on sales on a monthly basis with an accompanying commission statement reflecting shipments, commissions and deductions from commissions made by Craftex. Craftex reflected Gilberg's income for income tax purposes on IRS Form 1099.

About December 1980, Gilberg's Regional Manager responsibilities were removed by Craftex. At that time, Gilberg became responsible for sales to customers in Kansas, Nebraska, North and South Dakota, Minnesota and Iowa and was to be compensated by a commission at the agreed rate for all shipments resulting from sales in those additional states. In about January 1982, Missouri was reassigned to another sales representative.

In mid-1982, Gilberg's commission rate was increased from 6½% to 7% on all shipments based on sales to stores for which Gilberg had sales responsibility in his territory. At the same time, Gilberg assumed 50% of the advertising costs incurred in his territory, to start in 1983. In 1983, Gilberg and Craftex participated in a sales incentive markdown allowance program by which Craftex and Gilberg would share 50% of the customer profit margin guarantee markdown incurred through the program. Following these modifications in the terms of Gilberg's relationship with Craftex, Gilberg continued to represent Craftex's lines and make sales to Craftex's customers.

Gilberg's relationship with Craftex was terminated by Craftex on July 1, 1984, 30–45 days prior to the next selling season in the women's apparel industry. Craftex admits that it owes Gilberg $37,542.76 in unpaid commissions. Gilberg contends that the amount due is substantially greater.

Following Gilberg's termination, he received numerous job offers to represent other apparel manufacturers. Gilberg accepted some job offers, but declined all offers as an exclusive representative.

## II. MOTION FOR SUMMARY JUDGMENT

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The standard for granting summary judgment mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a). *Celotex Corp. v. Catrett*, 477 U.S. 317, ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Thus, the Rule 56(c) requires the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.*[2] Having defined the procedure to fol-

2. The Supreme Court has indicated that we should use the directed verdict standard to view this motion for summary judgment. However, in diversity actions, this Circuit has taken the position that whatever substantive law governs the legal issues, will govern the standard by which to determine motions for directed verdicts. *Kuziw v. Lae Engineering*, 586 F.2d 33, 35 (7th Cir.1978). *See also Gonzalez v. Volvo of America Corp.*, 752 F.2d 295, 301 (7th Cir.1985). Because we have decided, as noted below, that the substantive law of Illinois governs this action, it would appear that we must look to Illinois law for the standard by which to view this motion for summary judgment. The Illinois standard for directed verdicts and judg-

low, we must next determine the substantive law that applies. The parties seem to have assumed that Illinois law governs this action merely because this action was filed in Illinois.[3] In diversity cases a federal court must follow the conflict of laws principles prevailing in the state in which it sits. *Klaxon v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Therefore, we must look to Illinois choice of law principles.

Gilberg's claims are in tort and contract and therefore require separate conflict of laws analysis.

As to the tort claims, Illinois has clearly adopted the Restatement's "most significant" contacts approach. *Ingersoll v. Klein,* 46 Ill.2d 42, 48, 262 N.E.2d 593, 596 (1973).[4] The Restatement provides two

sets of criteria for the measurement of the "most significant relationship." The first set of criteria includes general factors such as the needs of the interstate system; relevant policies of the forum and other interested states; protection of justified expectations; the basic policies underlying the particular field of law; certainty; predictability and uniformity of result; and ease in the determination and application of the law to be applied. *Restatement (Second) of Conflicts* § 6 (1971). The second set of criteria includes the contacts to be taken into account in applying these principles. These contacts are: (1) the place of the injury; (2) the place of misconduct; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the rela-

ments n.o.v. was established in *Pedrick v. Peoria & E.R.R.,* 37 Ill.2d 494, 510, 229 N.E.2d 504, 513–14 (1962):

> In our judgment verdicts ought to be directed and judgments n.o.v. entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand.

The Supreme Court, however, in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1985), a diversity libel action, used a federal directed verdict standard to consider whether summary judgment had been properly granted. *Anderson.* 477 U.S. at ——, 106 S.Ct. at 2511–12. The Court set forth the following as the standard:

> whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

*Id.* Because we believe that Gilberg has met either standard as to the questions on which we do not grant summary judgment, we will not try and decide which standard to use, although there only appears to be a semantic difference between the two.

**3.** Gilberg in his response comments in a footnote that he did not brief this issue because Craftex did not brief the choice of law issue. Nevertheless, Gilberg claimed he would show that his torts claims were valid under the laws of Illinois and New York. Yet, as to his contractual claims, Gilberg appears to assume that Illinois law applies.

**4.** The Restatement (Second), § 145 provides:
  § 145  The General Principle
  (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with

respect to that issue, has the most significant relationship to the occurrence and the parties in § 6.
  (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
  (a) the place where the injury occurred,
  (b) the place where the conduct causing the injury occurred,
  (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
  (d) the place where the relationship, if any, between the parties is centered.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.
  The Restatement (Second), § 6, (1971), provides:
  § 6  Choice of Law Principles
  (1) A court, subject to constitutional restriction, will follow a statutory directive of its own state on choice of law.
  (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
  (a) the needs of the interstate and international systems,
  (b) the relevant policies of the forum,
  (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
  (d) the protection of justified expectation,
  (e) the basic policies underlying the particular field of law,
  (f) certainty, predictability and uniformity of result, and
  (g) ease in the determination and application of the law to be applied.

tionship between the parties is centered. *Restatement (Second) of Conflicts* § 145 (1971).

Gilberg has identified three torts which he states are contained within Counts IV–VII, bad faith breach of contract, prima facie tort, and unfair competition. As discussed below, we do not believe that the claim Gilberg has styled as "bad faith breach of contract" is a claim in tort, but rather is a claim that sounds in contract. Therefore, for purposes of this analysis, we will only consider the claims for prima facie tort and unfair competition.

■ The place where the injury occurred could arguably be throughout Gilberg's sales territory, in that Gilberg claims he was injured by the misappropriation of his customers, injury to the good will he had developed with his customers and other assorted misdeeds with respect to his business with his customers.[5] Yet, because Gilberg had his office in Illinois, and it is from this office that he coordinated his activities, it would seem that the injury occurred in Illinois where Gilberg lived and had his office located. The place where the conduct causing the injury occurred would seem to be in New York where Craftex's offices were located and from where the Cohens allegedly made certain promises to plaintiff. Gilberg, Ltd. has its offices in Northbrook, Illinois, and Barry Gilberg lives in Northbrook also. Craftex is a New York corporation with its principal place of business there also. Finally, the place where the relationship is centered would be Illinois. This is where Gilberg operated out of, it is where Gilberg had his showroom and where Gilberg coordinated its operations with respect to its many custom-

ers scattered over the midwest. Thus, Illinois would appear to have more significant contacts with the action. Therefore, we will apply Illinois law, as the application of Illinois law would also support the policy ideals underlying the restatement approach. *See Restatement (Second) of Conflicts* § 6 (1971).

■ The choice of law rule in Illinois for contract cases appears to be in flux, but this Court has taken the position that if the Illinois Supreme Court were faced with the issue, it would adopt the "most significant contacts" approach. *Wonderlic Agency, Inc. v. Acceleration Corp.*, 624 F.Supp. 801, 804 (N.D.Ill.1985). Under the most significant contacts test for contracts, the Court must examine the following five factors: (1) the place of contracting; (2) the place of negotiations; (3) the place of performance; (4) the situs of the subject matter of the contract; and (5) the domicile, residence, place of incorporations and place of business of the parties. *Id.*

The facts [6] surrounding the place of contracting, or the initiation of the relationship between the parties are as follows. Although Barry Gilberg had known of Craftex and Robert Cohen as far back as the late 60's, it was not until March of 1980 that the agreement at issue came to fruition. Mr. Gilberg in March of 1980 ran into an ex-Craftex employee in Highland Park, Illinois. This person, Richard Glickman, told Gilberg that Craftex was interested in hiring someone for the Midwest territory, and that if he was interested, he should call Robert Cohen. Gilberg then called Craftex and talked with one of the Cohen brothers, and that whichever one it was, he wanted Gilberg to come to New York to sit down

---

**5.** It is extremely difficult to isolate exactly which actions of defendants caused plaintiff's alleged tortious injuries because plaintiff Gilberg made no effort to identify the facts when briefing the tort issues other than to generalize that "the facts in this case go far beyond a simple contract action and support a tort action based on malice distinct from the breach of contract." "Here Counts IV–VII sufficiently allege such a claim, and the facts of record involving the termination fully support it." "This case is replete with facts showing malice and ill will. Recent document production has revealed that in May, 1984 at the very time defendant prom-

ised plaintiff 6 more months of employment, plaintiff's replacement was being transferred to New York. This, and the other egregious facts discussed above, fully support valid tort claims in this case."

**6.** The facts surrounding the execution of the contract between the parties are taken from Barry Gilberg's deposition which was submitted by Craftex in support of its motion for summary judgment and appears to be uncontroverted as to these particular facts.

with he and his brother and discuss the position. Two days later, Gilberg met with the Cohen brothers at the Craftex offices in New York to discuss the position. The parties talked for three to four hours, and Gilberg flew back to Illinois that evening. During the meeting, the parties discussed the initial terms of the agreement between the parties as to commissions, territories, management responsibilities, but it was not until Gilberg returned to Illinois and received a phone call from Jack Cohen welcoming Gilberg to the company that Gilberg felt the parties had come to an agreement; prior to that point, the fact that Gilberg had gotten the job had only been alluded to.

■ Thus, the place of contracting is arguably in Illinois and New York, thereby cancelling out factor one. As for factor two, although New York was the place of negotiations, the parties contend that the contract was subsequently modified over the course of performance, which for the most part took place in Illinois, but also all over the midwest. As noted, the place of performance was arguably the entire midwest, but it was clearly centered in Illinois. The situs of the subject matter would seem to be irrelevant to this service contract. Finally, New York and Illinois cancel each other out as to place of incorporation and domicile of the parties. Thus, the state with the most significant contacts would be Illinois, the place where the performance was centered. Therefore, we will apply Illinois contract law, as the application of Illinois law would also support the policy ideals underlying the restatement approach. *See Restatement (Second) of Conflicts* § 6 (1971).

## III. BREACH OF CONTRACT ISSUES

Although the parties have an oral agreement that was never reduced to writing, Gilberg contends that the oral agreement may be supplemented by terms defined by custom and usage in the women's apparel industry. Craftex contends that, because the agreement was terminable at will, it could modify the terms of the contract at will also. Gilberg also seeks to recover commissions on Craftex's sales in his territory following his termination on the theory that he was the procuring cause of such sales. Further, Gilberg contends that Craftex made an oral agreement to continue to employ Gilberg for a six-month period commencing in May 1984. Finally, as part of the oral agreement which Craftex has acknowledged, Gilberg contends that he was to be paid for sales to accounts in his territory, but that Craftex breached this agreement by maintaining secret house accounts.

### A. Custom and Usage

Plaintiff Gilberg contends that he can supplement the terms of his contract with Craftex with the use of custom and usage in the women's apparel industry. In support of this position, Gilberg attached to his response memorandum the affidavits of Gilberg and three other independent salesmen and sales executives in the women's apparel industry. The defendant Craftex rejects Gilberg's use of these affidavits to prove the existence of various custom and usage employment terms because it contends that Gilberg's own deposition testimony contradicts these affidavits.

■ Where no stipulation to the contrary is included in a parties' contract, the customs and usages of the trade are presumed to form a part of the contract, provided the same are known to the parties or provided the parties are chargeable with knowledge thereof. *Fifteenth Avenue Christian Church v. Moline Heating and Construction Co.*, 131 Ill.App.2d 766, 265 N.E.2d 405 (1970). In absence of stipulation to the contrary, persons engaged in the same trade or business are presumed to have contracted with reference to the particular customs and usages of the trade, and it is proper to resort to such customs and usages to interpret the contract. *Id.*, 265 N.E.2d at 408. A custom or usage must be so uniform, long-established and generally acquiesced in and so well known as to induce belief that the parties contracted with reference to it, and it cannot be proved with reference to a few isolated instances. *Clark v. General Foods Corp.*, 81 Ill.App.3d 74, 36 Ill.Dec. 447, 451, 400

N.E.2d 1027, 1031 (1980) (citing *Kelly v. Carroll*, 223 Ill.App. 309, 315–16 (1921) (custom and usage used to determine the terms of an employment contract).

■ Craftex contends that Gilberg is prevented from presenting the affidavits of others as to the existence of custom or usage within the women's apparel industry because Gilberg's own deposition testimony contradicts such customs or usages. We must reject this characterization of Gilberg's testimony. Gilberg was asked whether he had contract terms, such as those he seeks to incorporate into his contract with Craftex, with any other employer. The fact that Gilberg did not have such terms does not mean such terms could not still be prevalent as custom and usage within the industry. Gilberg's comments would only be evidence that the terms he seeks to incorporate into his contract are not so wide-spread as to qualify as custom or usage.

■ In order to avoid this motion for summary judgment Gilberg, even though the non-moving party, must, as the party upon whom the burden rests at trial, present sufficient evidence on the existence of these various customs and usages so that he raises a question sufficient to present the question to the jury. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. at 2511–12. Gilberg has submitted the affidavits of three individuals who have been involved in the women's apparel industry for fifteen years, thirty years and thirty years respectively. Each stated that the following terms where generally accepted and have become custom and usage between manufacturers and salesmen when there is no written or express oral agreement. Each also stated that these usages and customs were uniform, long-established and generally acquiesced in by manufacturers and salesmen whenever there is no express agreement on the same term:

(1) that a written or oral notice of termination is given sixty days prior to the start of the selling season;

(2) that a manufacturer ships a minimum of 85% of booked, credit approved orders;

(3) that deductions against a salesman's commissions for advertising or markdown allowances granted to a customer are always a matter of agreement between the salesman and the manufacturer, including deductions after the salesman is terminated, unless the deduction had been previously agreed to;

(4) that a salesman is entitled to commissions on reorders from sales made during the last season he worked, because his sales efforts created the original sale on which the reorder was based.

Defendant Craftex has presented no affidavits from experts to contradict Gilberg's experts or any other evidence of custom and usage and relies solely on the allegedly contradictory deposition testimony of Gilberg.

Based on the pleadings, interrogatories, depositions and affidavits, we find there is a genuine issue of fact as to the existence of custom and usage within the women's apparel industry. Therefore, we must deny Craftex's motion for summary judgment as to this issue.

### B. *Procuring Cause*

Gilberg in his response memorandum contends that "plaintiff is also entitled to prove damages based upon the fact that most of the sales in its territory for the season *following* termination, resulted from plaintiff's prior sales efforts and solicitations. Plaintiff does not have to have direct personal contact with the customers, as long as the sales in question were all but consummated as a result of its efforts. *Richer v. Khoury Brothers, Inc.*, 341 F.2d 34, 37, 38 (7th Cir.1965); *Heuvelman v. Triplett Electrical Instrument Co.*, 23 Ill. App.2d 231, 161 N.E.2d 875 (1st Dist. 1959)." Craftex rejects this position and claims that in the cases cited by Gilberg, the parties had done everything necessary to effect the sale and thus were the procuring cause of the sale.

In the *Richer* and the *Heuvelman* cases, the salesman had arranged for listings of the company's products in catalogs prior to their employment termination. Sales were generated from these listings after the

salesmen had been terminated, and they each sought to recover commissions from the sales as the procuring cause of the sales. In *Richer* the court held that the record revealed sufficient evidence that the salesman had been the procuring cause and was thus entitled to commission on those sales. In *Heuvelman,* on a motion to strike, the court held the plaintiff salesman had alleged sufficient facts so that his claim for commissions could proceed to trail to prove he was the procuring cause.

In opposing a motion for summary judgment, plaintiff Gilberg must produce sufficient evidence to demonstrate the existence of a material dispute of fact. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. at 2511–12. Unlike the *Heuvelman* and *Richer* cases, Gilberg did not place a listing in a catalog which resulted in sales continuing to be generated after his termination. In this case, evidence that Gilberg was the procuring cause would involve testimony from the purchasers that they purchased because of Gilberg's efforts and not because of other reasons that had nothing to do with Gilberg. Evidence would also have to show that Gilberg did everything necessary to complete the sales prior to termination. For consideration of this motion for summary judgment, plaintiff Gilberg has attached custom and usage experts' affidavits, Gilberg's answers to interrogatories, Gilberg's affidavit, his attorney's affidavit as to jury instructions submitted in other cases and deposition abstracts from the Cohens. The defendant Craftex submitted Gilberg's deposition, the Cohens' abstracts and more of plaintiff's interrogatories. Gilberg has not directed our attention to which parts of these evidential materials support its claim that he was the procuring cause. Gilberg contends that Count IV alleges these facts, but a party may not rest upon pleadings to oppose a motion for summary judgment and must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510 (1986).

Craftex contends that Gilberg's claim for commissions on sales for the next season was only raised for the first time in Gilberg's response memorandum. Regardless of this, Craftex contends that Gilberg is not entitled to commissions for the next season as a matter of law. Craftex contends that Gilberg did not do everything necessary to sell the merchandise for the next season and cites relevant portions of Jack Cohen's deposition and portions of Jerome Spilka's deposition.

■ We find that Gilberg has not met its burden to show the Court there is a disputed issue of material fact as to the question of whether Gilberg was the procuring cause of the next season's sales. Craftex has provided evidence which tends to show that Gilberg was not the procuring cause, and Gilberg has not shown this Court which facts support his claim. Gilberg's affidavit only states that Craftex hired JoAnne Bagley to work Gilberg's accounts and territory after Craftex terminated Gilberg. This would indicate that Bagley could easily have been the procuring cause for the next season's sales. Our review of the rest of the evidence submitted by Gilberg also fails to reveal *any evidence* as to who the procuring cause was on Craftex's sales for the season following Gilberg's termination. Having failed to raise a material question of fact as to whether Gilberg was the procuring cause on the next season's sales, we have no choice but to grant defendant Craftex's motion for summary judgment as to this issue. Therefore, we hold that as a matter of law, Gilberg is not entitled to recover commissions on Craftex's sales for the season following Gilberg's termination on his procuring cause theory.

### C. *Express Breach of Contract for Employment for Six Months*

Gilberg contends that in May 1984 Craftex made a representation that Gilberg would continue to be employed for another six months. Gilberg contends that he relied on this statement and did not look for another job. Gilberg provides his own affidavit as to this conversation and also points to circumstantial evidence which he claims supports the existence of this contract. He was ordered by Craftex to vacate his office

immediately, but Craftex required him to pay rent until November 1984, which was six months from May 1984. Also, Gilberg was required to sign a release by Craftex before he could receive earned commissions. This, Gilberg contends, would not have happened unless Craftex knew the termination was improper.

■ Because this was an oral contract that could be performed within the "space of one year from the making thereof," it need not be in writing under the Illinois Statute of Frauds. Ill.Rev.Stat. ch. 59 § 1 (1985). *See Brudnicki v. General Electric*, 535 F.Supp. 84 (N.D.Ill.1982). Craftex seems to think that because this was an oral contract that plaintiff needed to proceed upon a theory of promissory estoppel. Promissory estoppel would only be relevant if Gilberg could not prove the essential elements of a contract or if the contract was barred by the statute of frauds. Although Gilberg makes reference to his detrimental reliance on this contract, such reliance speaks to Gilberg's damages for breach of the six-month contract and not to reliance for promissory estoppel.

■ Craftex cites *Ladesic v. Servomation Corp.*, 140 Ill.app.3d 489, 95 Ill.Dec. 12, 13–14, 488 N.E.2d 1355, 1356–57 (1986), as holding that foregoing other employment opportunities is not sufficient consideration to support the purported extension. We disagree. *Ladesic*, at the most, stands only for the proposition that foregoing other employment opportunities is not sufficient consideration to support an offer of *permanent* employment. The consideration sufficient to support the offer of employment for a *limited time* period is the obligation of services to be performed on the one hand and wages to be paid on the other. *See Heuvelman v. Triplett Electri-*

*cal Instrument Co.*, 23 Ill.App.2d 231, 235, 161 N.E.2d 875, 877 (1959). Therefore, there is no lack of consideration to bar Gilberg's claim for breach of contract.

We find that plaintiff has raised sufficient questions of material fact concerning the existence of an express oral contract for six months employment, thus precluding Craftex's motion for summary judgment on this issue.

### D. *Modification of the Terms of the Terminable at Will Employment Contract*

■ Craftex contends that because the contract between the parties was terminable at will, it could also be modified at will. Other than a modification as to the advertising and markdown allowances, Craftex does not specifically identify the modifications it claims to have made. By a process of elimination, we have identified the deletion of the State of Missouri from Gilberg's responsibilities as the only real modification at issue here.[7]

Gilberg contends that when he was hired, the State of Missouri was included in his assigned territory. Subsequently, however, Craftex unilaterally took Missouri away. The only evidence for our consideration of this issue is Gilberg's statement in his affidavit that "[a]fter I started to work for Craftex, Jack Cohen arbitrarily took Missouri out of my agreed territory over my protest."

■ Craftex contends that under Illinois law, it was free to modify the parties' contract at will. Craftex rejects this Court's earlier decision in *Bartinikas v. Clarklift of Chicago, Inc.*, 508 F.Supp. 959 (1981), where we noted that under Illinois law where the term of employment is at the will of the parties and the employer

---

7. The only other "terms" at issue in this case are the terms that Gilberg seeks to incorporate into the contract by way of custom and usage. Because custom and usage terms are only applicable in the absence of an agreement between the parties to the term, such terms by their nature would be incapable of modification. If there was an agreement on the terms, custom and usage would be inapplicable. As to Craftex's reference to the advertising markdowns, Gilberg contends that this was a matter of custom and

usage, not an explicit contract term between the parties. Gilberg admits that some of the deductions were correct, but challenges those made subsequent to his termination. Even so, it would seem to be the case, although we do not decide, that once Gilberg was terminated Craftex could no longer make modifications to his contract. The consideration for modifications by an employer is the continued employment of the employee. Something that is obviously missing once the employee is terminated.

modifies the terms of the contract, the employee is bound by the terms of the modification if he fails to reject the modification and continues to work for the employer. *Id.* at 961. In that case, we held an employer could not enforce an alleged modification where an employee rejected the modification. The employer's option once the employee rejected the modification was to fire the employee, but not to enforce the modification. Craftex contends that this reading of Illinois law is no longer valid and cites *Wyatt v. Dishong*, 127 Ill.App.3d 716, 720, 83 Ill.Dec. 1, 469 N.E.2d 608 (1984), and *Garber v. Harris Trust & Savings Bank*, 104 Ill.App.3d 675, 60 Ill.Dec. 410, 675, 432 N.E.2d 1309 (1982), for the proposition that a terminable at will contract can be modified at any time as a condition of its continuance, despite protests by the employee. A reading of these cases reveals that *Wyatt* cites *Garber* for that proposition, and *Garber* essentially cites the same cases this Court relied on for the proposition that an employer cannot modify a contract above rejection by the employee. Thus, we are not convinced that the Supreme Court of Illinois, if faced with this precise question, would find that an employer can unilaterally modify a terminable at will employment contract over the rejection by the employee. Therefore, we hold by our earlier opinion that under Illinois law where the term of employment is at the will of the parties, and the employer modifies the terms of the contract, the employee is bound by the terms of the modification if he fails to reject the modification and continues to work for the employer. Thus, where Gilberg in his affidavit testified that he rejected the removal of Missouri from his reponsibilities and Craftex has presented no evidence on this issue, we find there is a material question of fact as to Gilberg's rejection of the alleged modification precluding the grant of summary judgment on this issue.[8] Therefore, we deny Craftex's motion for summary judgment on this issue.

[8] Although Gilberg in his affidavit indicated that he protested the removal of Missouri, Craftex is still entitled to prove that he subsequently retreated from his rejections by waiver.

### E. *Express Breach of Contract: Secret House Accounts*

Gilberg entered into an oral agreement by which he agreed to exclusively represent Craftex in Chicago and in the States of Illinois, Indiana and Wisconsin and Missouri. The terms of the agreement were orally expressed at a meeting between the parties, and some of those terms were that Gilberg would receive 6½% commission based on sales made to stores in his territory and 3% on all irregular and off price goods shipped into Gilberg's territory based on sales to stores for which Gilberg has had sales responsibility. Gilberg contends that Craftex represented that it had no house accounts in Gilberg's territory. Craftex has admitted this in its response to interrogatories. (¶ 8). Gilberg states in his affidavit that in the course of discovery he reviewed documents at Craftex's factory which showed that Craftex did sell to discount operations such as Venture, Marshalls and J. Brennan, which have stores in his territory. He also stated that he never received commissions on such sales.

Craftex does not address this issue directly, nevertheless, we find that Gilberg has raised sufficient facts to demonstrate that there is a material question of fact as to whether Craftex violated the express terms of the parties' agreement by maintaining secret house accounts. Therefore, we deny Craftex's motion for summary judgment as to this issue.

### IV. TORT ISSUES

In its unlabeled Counts IV–VII plaintiff claims he has set forth separate tort claims. Gilberg specifically abandons a number of tort claims also:

1. Plaintiff does not assert a separate tort for breach of the "covenant of good faith," but retains this theory as a matter of contract interpretation and a standard of dealing between the parties.

2. Plaintiff withdraws any claim of conversion of goodwill or customers.

3. Plaintiff withdraws the theory of intentional interference with contractual relations and the theory of interference with prospective business advantage.

4. Plaintiff withdraws the theory of intentional infliction of emotional distress, but retains emotional distress as an element of damages.

Gilberg identifies his remaining tort theories as "Bad Faith Breach of Contract," "Unfair Competition" and "Prima Facie Tort."

## A. *Bad Faith Breach of Contract: Recovery of Expenses*

Gilberg identifies one of his theories for relief in Counts IV–VII as "Bad Faith Breach of Contract." Although we would not so characterize this claim as such,[9] we do find that Gilberg has set forth sufficient facts in his affidavits and exhibits to his memorandum to raise a question of fact that must be resolved by the factfinder.

■ Essentially, plaintiff seeks to recover expenses incurred by him before he had an opportunity to recover such expenses by commissions. Gilberg states in his affidavit that his expenses for the two years before his termination were $115,-627.00 and his expenses for markdowns, advertising and samples were $78,677.49. Additionally, Gilberg stated that he was unable to recoup these expenses because of his termination. It is also for the trier of fact to resolve whether Gilberg was allowed a reasonable time to recoup these expenses prior to his termination. *P.S. & E., Inc. v. Selastomer Detroit,* 470 F.2d 125 (7th Cir.1972).

## B. *Prima Facie Tort*

■ Gilberg identifies another claim for relief buried within Counts IV–VII as "Prima Facie Tort." Because we do not find that such a tort is recognized as a separate tort in Illinois, we grant Craftex's motion for summary judgment on this issue.

Gilberg has cited two Illinois cases for the proposition that this tort exists under Illinois law. Gilberg cites statements from these two cases and contends that they create this Prima Facie Tort. *Doremus v. Hennessy,* 176 Ill. 608, 52 N.E. 924, *reh. denied,* 176 Ill. 618, 54 N.E. 524 (1898), and *Pendelton v. Time,* 339 Ill.App. 188, 89 N.E.2d 435 (1949).

*Doremus v. Hennessy* is considered the establishing Illinois case for the torts of tortious interference with business relationships and contractual relationships, torts which plaintiff has abandoned. *See, e.g., Swager v. Couri,* 77 Ill.2d 173, 32 Ill.Dec. 540, 547, 395 N.E.2d 921, 928 (1979); *H.F. Philipsborn & Co. v. Suson,* 59 Ill.2d 465, 322 N.E.2d 45, 50 (1975); *Herman v. Prudence Mutual Casualty Co.,* 41 Ill.2d 468, 244 N.E.2d 809, 812 (1969). *See also* Broida & Handler, *Tortious Interference with Contract and Prospective Advantage in Illinois,* 32 DePaul L.Rev. 325, 336 (1983). *Pendleton v. Time, Inc.* represents recognition by the Illinois courts of a property right of publicity which can be injured. Saret & Stern, *Publicity and Privacy— Distinct Interests on the Misappropriation Continuum,* 12 Loyola U.L.J. 675, 687 (1981).

Neither of these cases expressly recognizes a "Prima Facie Tort." Nor do we think that the Supreme Court of Illinois would elect to recognize such a tort in these circumstances. In New York, where the prima facie tort is clearly recognized, the elements are: (1) intentional infliction of harm, (2) causing special damages, (3) without excuse or justification, (4) by an act or series of acts that would otherwise be lawful. *Curiano v. Suozzi,* 63 N.Y.2d 113, 480 N.Y.S.2d 466, 470, 469 N.E.2d 1324, 1327 (1984). The idea behind the "Prima Facie Tort" is that without such a tort the plaintiff would lack a remedy. *A Remedy for All Injuries,* 25 Chi [–] Kent L.Rev. 90 (1946). This is clearly not the case in this situation, as evidenced by the rest of this opinion. Gilberg has several contract remedies available to him. We believe that tortious injuries occurring in the realm of business relationships are readily addressed by the Illinois law relat-

---

**9.** This claim is more properly characterized a breach of an implied in fact covenant not to terminate an agent before he has sufficient time to recoup expenses.

ing to tortious interference of business relationships and contractual relations. *See also Curiano v. Suozzi*, 63 N.Y.2d 113, 480 N.Y.S.2d 466, 470, 469 N.E.2d 1324, 1328 (1984) ("[the Prima Facie Tort] should not 'become a catch-all alternative for every cause of action which cannot stand on its legs.' "). Accordingly, finding that such a tort is not recognized in Illinois, we grant Craftex's motion for summary judgment on this issue.

### C. *Unfair Competition Tort*

Gilberg contends that he has set forth sufficient facts to justify a claim for unfair competition:

> Plaintiff also sufficiently has set forth a claim for unfair competition. The elements for this claim were set forth by Judge Moran in *Fiore:*
>
>> The plaintiff has, moreover, alleged the substance of unfair competition by claiming that once he had developed many fruitful business contacts the defendant intentionally and maliciously terminated the employment agreement in order to reap the sales without paying plaintiff a commission. *Fiore*, at 7.

Plaintiff fails to cite Judge Moran's next two sentences which clearly show that the judge was not referring to an independent tort of unfair competition: "At this stage in the case such an allegation suffices. Consequently, plaintiff's third claim states a cause of action for *tortious interference with prospective business opportunities." Fiore v. Electric Sok Corp.*, No. 83 C 5338, slip op. at 7 (N.D.Ill. March 27, 1984). Again, another cause of action that the plaintiff has abandoned. The unfair competition Judge Moran refers to is a claim that would negate an affirmative defense of fair competition to an action for tortious interference with prospective business opportunities.

▮ The only other unfair competition action recognized in Illinois is available when the adoption and use of a product name by a defendant is likely to cause confusion in the trade as to the source of the products or is likely to lead the public to believe that defendant is in some way connected with the plaintiff. *Lady Esther v. Lady Esther Corset Shoppe*, 317 Ill.App. 451, 46 N.E.2d 165 (1943). We are unable, nor does plaintiff assist us, to see how this particular tort is applicable in this employment context. The only products involved are defendant's clothing, and there has been no discussion that Gilberg had his own line of clothing to compete.[10]

Because we are not convinced that Gilberg has a claim under Illinois law for unfair competition, we grant Craftex's motion for summary judgment as to this issue.

## V. MOTION FOR RULE 11 SANCTIONS

Craftex has moved this Court to award it attorney's fees for Gilberg's assertions of state tort claims not recognized in Illinois. Rule 11 provides that the signature of an attorney on a pleading or other paper "constitutes a certificate by him that he has read the pleadings, motion other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose ..." Fed.R.Civ.P. 11.

▮ Although we do reject Gilberg's use of the "prima facie tort" concept under Illinois law, we find that Gilberg's assertion of the tort was not unreasonable. First, Gilberg in a footnote indicated that he was uncertain which state's law should apply, so he briefed the issue of prima facie tort under Illinois law and New York law. The prima facie tort concept is recognized in New York. *See, e.g., Curiano v. Suozzi*, 63 N.Y.2d 113, 480 N.Y.S.2d 466, 469 N.E.2d 1324 (1984). Just becuase Craftex assumed that Illinois law applied and Gil-

---

**10.** Ill.Rev.Stat. ch. 121½ ¶ 312 (1985) has been referred to as a statutory unfair competition, nevertheless plaintiff has not claimed that he has a cause of action under that statute, nor do we find it applicable in the instant case.

berg did not is not a sufficient reason to impose sanctions under Rule 11. Additionally, we find that the assertion of a prima facie tort is not unreasonable under Illinois law in light of the fact that both Illinois cases cited by Gilberg were discussed within an American Law Reports article on the prima facie tort. Annotation, *Prima Facie Tort* § 2 16 A.L.R.3d 1191 (1967). While the annotation does not say Illinois recognizes such a tort, it is reasonable to argue that it does.

Finally, while a careful reading of Judge Moran's opinion in *Fiore* would have clarified the purpose of the unfair competition claim in that context, we do not find Gilberg's assertion justifies sanctions. There was clearly no intention to mislead the court, as Gilberg appended a copy of the *Fiore* slip opinion to its brief.

Because we find that the circumstances in this case do not justify Rule 11 sanctions, we deny Craftex's motion.

## VI. CONCLUSION

We have granted partial summary judgment for defendant Craftex on the following claims. Gilberg's claim to recover commissions for Craftex's sales in the season following Gilberg's termination on a theory that Gilberg was the procuring cause of those sales. Such a claim must fail where Gilberg has failed to show any evidence that there exists a disputed question of material fact as to whether he was the procuring cause for the sales. Gilberg's claim for recovery under a "prima facie tort" because we find that Illinois does not recognize such a claim. And finally, we grant summary judgment for defendant on Gilberg's claim for unfair competition because we find that it is not recognized in these circumstances in Illinois.

We have denied summary judgment on the following claims and/or issues. We find there is a genuine issue of fact as to the existence of custom and usage within the women's apparel industry precluding summary judgment for defendant. There is also sufficient questions of material facts concerning the existence of an express oral contract for six months employ-

ment, thus precluding a motion for summary judgment. We must also deny the summary judgment motion as to whether Gilberg's contract was properly modified by the deletion of the State of Missouri, as there remains a question as to whether Gilberg rejected such modification. Gilberg has also raised sufficient facts so as to preclude a motion for summary judgment as to Gilberg's claim for commissions on secret house accounts. Finally, Gilberg has raised sufficient facts to raise a question whether he was terminated before he could reasonably recover his expenses. Accordingly, Craftex's motion for summary judgment is granted in part and denied in part. It is so ordered.