70 F.3d 1272
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Percy LEWIS and Maswep Enterprises, Inc., Plaintiffs-Appellants,
v.
McDONALD'S CORPORATION, Defendant-Appellee.
 No. 94-1351.
 United States Court of Appeals, Sixth Circuit.
 Nov. 27, 1995.
 
 Before: MILBURN and RYAN, Circuit Judges; GODBOLD, Senior Circuit Judge.*
 RYAN, Circuit Judge.
 
 
 1
 In this diversity dispute over a restaurant franchise, the district court dismissed certain claims brought by the plaintiffs, Percy Lewis and MASWEP Enterprises, Inc., and granted summary judgment to the defendant, McDonald's Corporation, as to others.
 
 
 2
 On appeal, the plaintiffs raise a number of issues, none of which we find to have merit. For the reasons that follow, we shall affirm.
 
 I.
 
 3
 Percy Lewis, a black male, entered into a franchise agreement with the McDonald's Corporation in late 1985 to open a McDonald's restaurant in Detroit, Michigan. MASWEP Enterprises, Inc., a corporation wholly owned by Lewis, became the operator of the franchise under an assignment agreement between Lewis and McDonald's, although Lewis remained personally liable to McDonald's.
 
 
 4
 The franchise agreement required Lewis and MASWEP to pay a fixed minimum monthly rental, as well as service fees, to McDonald's. If sales at the franchise exceeded a certain level, Lewis and MASWEP were also required to pay a percentage of their gross sales to McDonald's; further, the plaintiffs had to reimburse McDonald's for real estate taxes and any general and special assessments.
 
 
 5
 In 1988, three years after Lewis opened his restaurant, McDonald's opened a new restaurant approximately 1.5 miles away. Although Lewis expressed interest in operating this restaurant, McDonald's awarded the franchise to another black male. After this restaurant opened, Lewis's restaurant suffered a decline in annual sales volume from $1.6 million in 1988 to $1.1 million in 1992.
 
 
 6
 Sometime in the middle of 1992, McDonald's offered to purchase Lewis's restaurant and place Lewis in a restaurant at another location. Lewis accepted the offer and began operating at the new location under an oral agreement.
 
 
 7
 Only a few months later, McDonald's terminated Lewis's operation of the new restaurant, alleging that Lewis breached his franchise agreement by engaging in a separate restaurant business similar to a McDonald's restaurant. McDonald's nonetheless allowed Lewis to resume operations at his original location. Shortly after Lewis's return, however, McDonald's opened yet another new restaurant, which was again 1.5 miles away from Lewis's restaurant. This franchise, too, was awarded to a black male. Lewis's sales continued to decline after the opening of this new restaurant.
 
 
 8
 Several months later, in April 1993, McDonald's notified Lewis that he was in default under the franchise agreement because of his failure to pay $53,496.09 in base rent, as well as requisite percentages of gross sales, service fees, real estate taxes, and interest. McDonald's informed Lewis that it would terminate the franchise if he did not pay the amount due by April 29, 1993.
 
 
 9
 Instead, Lewis and MASWEP filed suit. The complaint alleges conspiracy to deprive Lewis of his civil rights in violation of 42 U.S.C. Sec. 1985; racial discrimination in violation of Michigan's Elliott-Larsen Civil Rights Act, Mich.Comp.Laws Ann. Sec. 37.2101 et seq.; breach of an implied duty of good faith; violations of the Michigan Franchise Investment Act, Mich.Comp.Laws Ann. Sec. 445.1501 et seq.; and breach of contract. McDonald's filed a counterclaim against Lewis and MASWEP, alleging breach of contract and trademark infringement, and seeking recovery of the amounts due to McDonald's and injunctive relief.
 
 
 10
 McDonald's filed a motion for summary judgment and for dismissal under Fed.R.Civ.P. 12(b)(6). The district court dismissed the Sec. 1985 and the good faith claims, and granted summary judgment on the Elliott-Larsen and Michigan Franchise Investment Act claims. Further, the district court entered summary judgment in favor of McDonald's on its breach of contract counterclaim in the amount of $69,710.29, and granted a permanent injunction enjoining the plaintiffs from occupying the restaurant and from using McDonald's trademarks.
 
 
 11
 Lewis's breach of contract claim remained, and it was scheduled for trial. Following the district court's denial of the plaintiffs' motion for reconsideration of the dismissal of their duty of good faith claim, the plaintiffs filed a motion for continuance, seeking a stay of the trial while they pursued an interlocutory appeal to this court. When this motion, too, was denied, the plaintiffs informed the district court that they were not prepared to proceed. The court then dismissed the plaintiffs' breach of contract claim for failure to prosecute under Fed.R.Civ.P. 41(b). This appeal followed.
 
 II.
 A.
 
 12
 We shall first address the plaintiffs' argument that the district court erred in granting summary judgment to the defendant on its claim against the plaintiffs for breach of the franchise agreement. Essentially, the plaintiffs argue that McDonald's cannot recover for breach of contract on the grounds of the plaintiffs' nonpayment of fees, because McDonald's committed a prior breach when it opened a restaurant 1.5 miles away from their restaurant.
 
 
 13
 We review the district court's grant of summary judgment de novo, employing the same test used by the district court. Brooks v. American Broadcasting Cos., 932 F.2d 495, 500 (6th Cir.1991). Thus, we view the evidence in the light most favorable to the nonmoving party, and determine whether all the evidence before the district court " 'show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to [a] judgment as a matter of law.' " Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988) (quoting Fed.R.Civ.P. 56(c)); see also Adickes v. S.H. Kress & Co., 398 US 144, 157 (1970).
 
 
 14
 The agreement between the parties provides that Illinois law shall govern any disputes. Under Illinois law to prevail on its claim, McDonald's must prove the following elements: (1) the existence of a valid and enforceable contract; (2) performance by McDonald's; (3) breach of the contract by Lewis; and (4) resultant injury to McDonald's. Nielsen v. United Serv. Auto Ass'n, 612 N.E.2d 526, 529 (Ill.App.Ct.), appeal denied, 622 N.E.2d 1210 (1993). "[F]ailure to comply with a duty imposed by the contract gives rise to the breach." Id. If a party breaches a contract by failing to comply with a duty imposed by the contract, then the other party's remedy depends on whether the breach was minor or material. Circle Sec. Agency, Inc. v. Ross, 437 N.E.2d 667, 672 (Ill.App.Ct.1982). If the breach is only minor, the other party may recover damages, but its duty to perform is not excused. Id. If the breach is material, then the other party is excused from performing its duties under the contract and may regard the contract as at an end. Wyatt v. Dishong, 469 N.E.2d 608, 610 (Ill.App.Ct.1984).
 
 
 15
 The plaintiffs' argument fails on two grounds. First, Lewis's payments became delinquent in 1987. McDonald's did not build the new restaurant near Lewis's location until December 1988. Thus, Lewis was the "first breacher." Second, even assuming that Lewis's failure to pay was not a material breach and that McDonald's action was a breach of the franchise agreement, Lewis is nonetheless not excused from performing his duties under the contract unless the breach by McDonald's is material, thus allowing Lewis to consider the contract at an end. Clearly, Lewis's actions demonstrate that he did not consider the contract at an end when McDonald's built the two restaurants near him. He did not, for example, vacate the premises; instead, he continued to operate the restaurant. By doing so, he obligated himself to continue making payments under the franchise agreement. Thus, even if McDonald's breached, Lewis's nonperformance is not excused.
 
 
 16
 The district court did not err in granting summary judgment for the defendant on its breach of contract claim.
 
 B.
 
 17
 Next, the plaintiffs argue that the district court abused its discretion in denying their motion for a continuance of the trial date.
 
 
 18
 "A trial judge enjoys great discretion in ruling on a motion for a continuance," and a court of appeals reviews the district court's decision only to determine "whether the judge 'clearly abused' his discretion." United States v. Poston, 902 F.2d 90, 96 (D.C.Cir.1990) (citation omitted); see also United States v. Sawyers, 902 F.2d 1217, 1219 (6th Cir.1990), cert. denied, 501 U.S. 1253 (1991). Rule 39.1 of the Local Rules of the United States District Court for the Eastern District of Michigan provides that a trial continuance may be granted only "on timely application and good cause shown."
 
 
 19
 The district court did not abuse its discretion when it refused to grant the plaintiffs' motion for a continuance. The plaintiffs' motion was neither timely, nor for a good cause. The motion was not filed until the day the trial was scheduled to begin. The plaintiffs argue that they delayed because they believed the district court would grant their motion to reconsider, and they did not learn of the denial of their motion until four days prior to trial. We are unpersuaded. Obviously, the plaintiffs' hope that the district court would change its ruling was not a reason to fail to prepare for trial. Moreover, the motion for reconsideration addressed only whether the breach of the implied duty of good faith would be tried as well; thus, the trial on the breach of contract claim would have proceeded irrespective of the court's ruling. There was, therefore, no possible basis for the plaintiffs' failure to prepare the breach of contract claim for trial.
 
 C.
 
 20
 We shall address plaintiffs' remaining arguments together. The plaintiffs argue that the district court erred in granting summary judgment for the defendant on the plaintiffs' claims of racial discrimination in violation of the Michigan Franchise Investment Act, breach of implied duty of good faith, and in denying their motion for reconsideration as to the duty of good faith claim.
 
 
 21
 The district court's disposition of each of these issues was entirely correct. The basis for the court's rulings as to each of these claims was carefully articulated by the district judge, the Honorable Patrick J. Duggan, in his well-written opinion. We agree entirely with Judge Duggan's reasoning and, since we cannot improve upon his opinion, we adopt that portion of the opinion that addresses these issues as our own.
 
 III.
 
 22
 For the foregoing reasons, we AFFIRM.
 
 
 
 *
 The Honorable John C. Godbold, Senior United States Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation