AMERICAN FOOD MANAGEMENT, INC., Plaintiff-Appellee, *v.* WESLEY C. HENSON *et al.*, Defendants-Appellants.

Fifth District    No. 81-685

Opinion filed April 2, 1982.

J. Phil Gilbert, of Gilbert and Gilbert, of Carbondale, for appellants.

Charles E. Schmidt, of Mitchell, Brandon and Schmidt, of Carbondale, and Richard C. Thomas, of Bear, Hines and Thomas, of Columbia, Missouri, for appellee.

JUSTICE JONES delivered the opinion of the court:

Defendants appeal from a judgment of the circuit court granting a permanent injunction which prohibited the violation of restrictive covenants in a contract of employment and a contract for furnishing food

services. We consider provisions of two written contracts although litigation in the case has dealt principally with but one of them, that containing the employee's covenant not to compete.

Plaintiff, American Food Management, Inc., a Missouri corporation, provides food services in several States to facilities such as college dormitories. One of plaintiff's numerous contracts for such services—and one of the two contracts with which we are here concerned—was with the Stevenson Arms Dormitory in Carbondale, Illinois. This contract was signed for Stevenson Arms Dormitory by "Lewis H. Smith" as an individual without any reference to a partnership or to any other type of business association. Lewis Smith is a practicing dentist who owns and operates the Stevenson Arms Dormitory. By the express terms of the contract it was to become effective on February 21, 1981, and was to expire three months later on May 21, 1981. This contract provided:

> "The Dormitory [Stevenson Arms] agrees that it will not hire management employees of American Food Inc. for the purpose of providing food service for the duration of the contract and one year thereafter."

No question was raised in the trial court as to the validity of this contractual provision.

In the operation of its business plaintiff uses a system of "absentee management," relying heavily upon the services of its unit managers. Defendant Wesley Henson had worked in food preparation under plaintiff's supervision while he was a student at Southwest Baptist College in Bolivar, Missouri. As he was finishing his final semester of college during the fall of 1979, he entered into an oral agreement with plaintiff to work as one of its unit managers at an annual salary of $9,000. In order to take the position in Chanute, Kansas, where Neosha Community College is located, defendant Henson moved to that city. He began to work for plaintiff on January 3, 1980.

Approximately a week to 10 days after he had begun working he received in the mail a letter mailed by plaintiff to him at Neosha Community College, instructing him to sign the original and one copy of the written contract enclosed, which contained a covenant not to compete expressed as follows:

> "5. The Manager agrees that in consideration of the terms of this contract, the training which he received, and his continuing good relationship with American Food, that he will not operate, establish, reestablish, open, reopen or in any manner become interested, directly or indirectly, either as an employee, owner, partner, agent, stockholder, director, or officer of a corporation, or otherwise, in any business, trade, or occupation similar to the business of American Food or in the business of college food service in any form

within a TWENTY-FIVE (25) mile radius of any unit at which he has worked for American Food, which is operating on the date of this contract or commences to or agrees to operate during the life of this contract, for a term of TWO (2) years after the termination of this contract."

It is undisputed that reference to a written contract or to an agreement not to compete was never made by either party to the employment agreement at any time prior to Henson's receipt of the written contract in the mail after he had begun to work for plaintiff. Plaintiff's president, Roger Neilson, testified at the hearing for injunctive relief that if Henson had refused to sign the employment contract, he would have "fired" him and that plaintiff requires all its unit managers to sign a covenant not to compete. Henson testified that when he received the written contract and instruction to sign it, he did not believe he had an option as to whether to sign it. Asked what he thought at the time, Henson answered,

"I thought that I was—I was told that I was to sign the contract, and I thought that if I signed it, then I would have my job, but if I did not sign the contract, then I would not have a job and I had already moved to Kansas and I would have to find another job somewhere else."

Henson signed the contract, which contained as its final provision,

"7. In so far as it is possible to do so, under the laws of any state in which this contract is to be enforced, the parties agree that the laws of Missouri shall apply."

Prior to Henson's receipt of the written contract neither party to the agreement had referred to the application to the employment agreement of the laws of any jurisdiction.

Henson had worked for plaintiff approximately 18 months when, in compliance with his written contractual agreement, he gave in writing, in a letter dated August 20, 1981, 21 days' notice of the termination of his contract with plaintiff. At that time he was serving as the manager of food services for the Wilson Hall Dormitory, located in Carbondale, Illinois. At no time during his employment with plaintiff did he work at Stevenson Arms Dormitory.

Plaintiff had with the Wilson Hall Dormitory a contract to provide food services similar to the contract between plaintiff and the Stevenson Arms Dormitory. Like that contract, the one between plaintiff and Wilson Hall Dormitory contained the provision prohibiting the hiring by Wilson Hall Dormitory of plaintiff's management employees for the purpose of providing food service for the duration of the contract and for one year thereafter. The owner and operator of Wilson Hall Dormitory, Howard Wilson, who is not a party to this lawsuit, had signed the agreement for Wilson Hall Dormitory, which was to be in effect for 12 months from

June 1, 1981, unless terminated by Wilson Hall Dormitory with 60 days' notice in writing. On August 25, 1981, Howard Wilson for Wilson Hall Dormitory terminated the contract with plaintiff, giving 60 days' notice in writing. Earlier, on August 18, 1981, Lewis Smith, having purchased Wilson Hall Dormitory, had become the new owner of that dormitory, renaming it International Hall. Defendant Henson testified at the hearing that on "the 17th or around there" he and defendant Smith had agreed that Henson would work for Smith as his food service manager for both the Stevenson Arms Dormitory and International Hall, formerly Wilson Hall Dormitory. Henson began to function in that capacity after he had finished his employment with plaintiff.

In a letter dated August 24, 1981, plaintiff's attorney reminded Henson of the terms of his written employment contract with plaintiff, particularly the covenant not to compete. On September 8, 1981, plaintiff filed a petition for injunctive relief against both Henson and Smith. Plaintiff sought both a preliminary and a permanent injunction against Henson, the latter injunction to provide that he be restrained and enjoined "from working as a food manager, cook, or other food related occupation [*sic*] at the Wilson Hall Dormitory, the Stevenson Arms Dormitory, or any other institution within 25 miles of the City of Carbondale for a period of two years since the termination of the Employment Contract between the parties as provided in the Employment Contract." Plaintiff sought a permanent injunction against Smith, d/b/a Stevenson Arms Dormitory, enjoining him "from employing Wesley Henson as a cook or other food service manager for a period of one year from the termination of said agreement between [plaintiff] and Lewis H. Smith, as provided in said agreement." Plaintiff sought no injunction against Smith, d/b/a International Hall, formerly Wilson Hall Dormitory. After a hearing on November 6, 1981, the trial court denied plaintiff's petition for a preliminary injunction. On December 18, 1981, the trial court entered a judgment granting a permanent injunction against defendant Henson and against defendant Smith, d/b/a Stevenson Arms Dormitory.

Defendants appeal raising several issues. In view of the disposition we make in this case, we consider but two of them, whether under the circumstances the covenant not to compete constitutes an adhesive clause unenforceable at law and whether plaintiff failed to prove irreparable harm and is, therefore, not entitled to injunctive relief.

■■■ Defendants maintain that Illinois law should control all questions arising out of this litigation, including the enforceability of the covenant not to compete contained in the agreement between plaintiff and defendant Henson. Although defendant Henson had no greater bargaining power with respect to the choice-of-laws provision than he had with respect to the covenant not to compete, because we think the result we

reach in his favor on this issue would be the same whether we apply Illinois or Missouri law, we apply the substantive law of Missouri, as plaintiff in its brief urges us to do. See also Restatement (Second) of Conflict of Laws §187 (1971).

Professor Corbin, in speaking of adhesion contracts, says:

> " 'Adhesion contracts' include all 'form contracts' submitted by one party on the basis of this or nothing. Ehrenzweig [Ehrenzweig, *Adhesion Contracts in the Conflict of Laws*, 53 Col. L. Rev. 1073 (1953)] defines them as 'agreements in which one party's participation consists in his mere "adherence", unwilling and often unknowing, to a document drafted unilaterally and insisted upon by what is usually a powerful enterprise.' He includes the following classes: Insurance Policies; Commercial Loan Contracts; Transportation Contracts; Employment Contracts." (6A Corbin on Contracts §1446, at 490 (1962).)

Corbin on Contracts §§559A through 559I (Kaufman supp. 1980) contains a rather extensive discussion of contracts of adhesion which is apt and instructive. Worth quoting is the observation:

> "Since the bulk of contracts signed in this country, if not every major Western nation, are adhesion contracts, a rule automatically invalidating adhesion contracts would be completely unworkable. Instead courts engage in a process of judicial review. Those terms which cannot be proven to be unfair are enforced, unless the rest of the contract is so one-sided that justice would be better served by discarding the contract entirely [citation], in which case it can be entirely unenforceable by the sticking party. Finding that there is an adhesion contract is the beginning point for analysis, not the end of it; what courts aim at doing is distinguishing good adhesion contracts which should be enforced from bad adhesion contracts which should not." Corbin on Contracts §559A(B) (Kaufman supp. 1980).

We now refer to the Missour Law of contracts of adhesion. In *USA Chem, Inc. v. Lewis* (Mo. App. 1977), 557 S.W.2d 15, discussed by plaintiff in its brief, the Missouri Court of Appeals considered the question of whether a standard form contract for employment containing a covenant not to compete was a contract of adhesion. The court concluded that it was not and ruled the covenant enforceable against the plaintiff's former employee. There is in *USA Chem, Inc.*, no indication that the defendant had begun working for the plaintiff prior to signing the contract for employment. On the issue of adhesion the court stated,

> "Here, the contract was a prerequisite to employment, but no one forced Mr. Lewis to accept and execute it. He, at all times, had the option to forego employment with USA Chem, but he chose to

accept employment in the justified belief it would be mutually gainful. As demonstrated, the contract meets the tests for enforceability; and adhesive clauses are subject to a defense of unconscionableness only when exacted by the overreaching of a contracting party who is in an unfairly superior bargaining position. *Fluor Western, Inc. v. G. & H. Offshore Towing Co.*, 447 F.2d 35, 39 (5th Cir. 1971)." 557 S.W.2d 15, 24.

Plaintiff argues that defendant Henson, presumably like the defendant in *USA Chem, Inc.*,

> " * * * had a clear choice as to whether or not he would accept employment under the terms and conditions offered. He read the contract, understood its terms, and signed it without any questions whatsoever. Wesley Henson is a college educated man who can use his college training and abilities in other areas of employment."

It is true that defendant Henson, upon reading plaintiff's letter and enclosed contract, understood his situation at once; indeed, the correctness of his perception that he would lose his job if he did not sign the written contract was borne out by the testimony of plaintiff's president. However, understanding the terms of the contract or the choices presented are not, for obvious reasons, the test of unconscionability. The test is, as the court stated, overreaching by a contracting party in an unfairly superior bargaining position. We think the test has been met here in view of the fact that defendant Henson had not only begun his employment with plaintiff pursuant to an oral agreement but had relocated in order to do so, all before he received plaintiff's written contract containing an additional promise by him to his detriment in the form of a covenant not to compete that contituted a condition of his continued employment.

■■ Although the trial court found in a memorandum that this contract was not one of adhesion, we reach a different conclusion. Plaintiff's conduct in failing, whether intentionally or unintentionally, to give reasonable notice that agreement to a covenant not to compete would be a condition of employment before defendant Henson had relocated and begun working for plaintiff amounted to overreaching by a contracting party in an unfairly superior bargaining position. We think this conclusion accords with the spirit and the letter of the law of both Missouri and Illinois (see *Eisele v. Ayers* (1978), 63 Ill. App. 3d 1039, 381 N.E.2d 21, and *Star Finance Corp. v. McGee* (1975), 27 Ill. App. 3d 421, 326 N.E.2d 518). The adhesive covenant not to compete is thus unenforceable by reason of the defense of unconscionability, and we therefore reverse that part of the judgment of the trial court restraining and enjoining Wesley Henson from competing with plaintiff.

As we stated earlier, defendants did not contend in the trial court that the contract between plaintiff and defendant Smith, d/b/a Stevenson

Arms, is for any reason invalid. In their brief on appeal defendants say that "[i]t is unclear from the language of his contract whether or not Defendant Smith committed a breach because Defendant Henson was never employed at Stevenson Arms." Even if the point were not waived for review, having been raised for the first time in this court, the suggestion of ambiguity is not well taken. Wesley Henson being one of the "management employees of American Food [*sic*] Inc." at the time the contract commenced and expired, there is no doubt as to its application to him.

Defendants maintain, further, that plaintiff failed to prove that it would suffer irreparable harm and, for that reason, is not entitled to injunctive relief. Although the parties have not addressed the question of whether Missouri or Illinois law should be applied to the resolution of this question, the express covenant as to choice of law notwithstanding, we have concluded that Illinois law must be applied in accordance with Restatement (Second) of Conflict of Laws §135 (1971). That section provides that "[t]he local law of the forum determines whether a party has introduced sufficient evidence to warrant a finding in his favor on an issue of fact, except as stated in §§133-134," which have no application to the instant case.

Defendants refer to the fact that the trial court failed to include a specific finding about the fact of irreparable injury as an indication of the court's error in granting the injunction against defendant Smith, d/b/a Stevenson Arms, "without hearing any evidence of testimony regarding irreparable harm." Supreme Court Rule 366(b)(3)(i) (73 Ill. 2d R. 366(b)(3)(i)) provides that "[n]o special findings of fact * * * [are] necessary to support the judgment or as a basis for review." Although a finding of all specific facts upon which a decree in equity is based is desirable, it is no longer necessary. Ill. Ann. Stat. ch. 110A, par. 366(b)(3)(i), Historical and Practice Notes, at 270-71 (Smith-Hurd 1976).

■ Despite defendants' contentions, the transcript of proceedings reveals that plaintiff pointedly addressed the issue of irreparable harm in the presentation of its evidence by testimony with respect to its organization according to a system of "absentee management." Plaintiff showed the harm it would suffer if such contractual provisions as this were not honored and that the very thing it had attempted to provide against had occurred, namely, its own loss of a contract for services as well as the loss of one of its trained unit managers. Since this was a bench trial it was the duty of the trial court to weigh the evidence and to draw from it proper inferences and conclusions, and these conclusions will not be disturbed on review unless they are contrary to the manifest weight of the evidence. (*County of Winnebago v. Willsey* (1970), 122 Ill. App. 2d 149, 258 N.E.2d 138.) Since the record reflects sufficient evidence to support the judgment

of the trial court against defendant Smith, d/b/a Stevenson Arms, the judgment was not against the manifest weight of the evidence and must be affirmed.

In its judgment for permanent injunction the trial court ordered the defendant Lewis H. Smith, d/b/a Stevenson Arms, "restrained and enjoined from hiring management employees of American Food Management, including Wesley C. Henson, for the purpose of providing food service for a period of one (1) year from and after the termination of said contract in May, 1981." Since the contract in question expressly provides for termination on May 21, 1981, we hereby amend the judgment of the trial court to reflect that date. Thus, the defendant Lewis H. Smith, d/b/a Stevenson Arms, shall be restrained and enjoined as ordered by the trial court for a period of one year from and after the termination of the contract between plaintiff and Stevenson Arms Dormitory on May 21, 1981.

Reversed in part; affirmed in part as amended.

KASSERMAN and HARRISON, JJ., concur.