H&M DRIVER LEASING SERVICES, UNLIMITED, INC., Plaintiff-Appellee, v. CHAMPION INTERNATIONAL CORPORATION, Defendant-Appellant.

First District (5th Division)   No. 1—87—3106

Opinion filed March 17, 1989.

Greenberger, Krauss & Jacobs, Chartered, of Chicago (John S. Mrowiec, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Stephen R. Swofford, Robert S. Minetz, and Scott M. Levin, of counsel), for appellee.

JUSTICE LORENZ delivered the opinion of the court:

This appeal arises out of a breach of contract action in which plaintiff, H&M Driver Leasing Services, Unlimited, Incorporated (H&M), al-

leged defendant, Champion International Corporation (Champion), wrongfully hired a truck driver furnished by plaintiff to defendant under a driver leasing agreement. Following a bench trial, the circuit court ruled in favor of H&M, awarded $10,000 in liquidated damages, enjoined Champion from future breaches, and ordered payment of $6,300 in attorney fees and costs.

We affirm in part, vacate in part, and remand with directions.

The following facts are undisputed. On August 26, 1985, H&M and Champion entered into a duly executed contract whereby H&M agreed to lease truck drivers, as needed, to Champion. Pertinent here, paragraph 12 of the contract provided:

> "[Champion] agrees that it will not hire any of the drivers that [H&M] furnished to [Champion] for a period of one (1) year from the termination date of this Agreement. In the event that [Champion] does hire any of the drivers in violation of the terms of this Agreement, then [Champion] shall pay to [H&M] all costs and expenses, including attorney's fees incurred by [H&M] in enforcing the provisions of this Agreement including injunctive relief. [Champion] also agrees to pay $10,000.00 liquidated damages to [H&M], *plus any and all actual damages resulting to [H&M]*." (Emphasis added.)

In July of 1985, H&M hired Clifton Sweezy and, the following month, supplied him as a driver to Champion.

On March 14, 1986, H&M filed a complaint against Champion alleging that, in January of 1986, Champion had hired Sweezy as one of its own employees in violation of paragraph 12 of the contract. Plaintiff sought injunctive relief to prohibit Champion from hiring other drivers in future breach of the contract. Additionally, plaintiff sought, pursuant to paragraph 12, actual damages, $10,000 in liquidated damages, and attorney fees and costs.

In its answer, Champion admitted hiring Sweezy. However, Champion raised three affirmative defenses: (1) because Sweezy left Champion's employ in February 1986, the claim for injunctive relief was moot and any damage claim could not extend beyond that time; (2) the claim for $10,000 in liquidated damages was unenforceable as constituting a penalty provision; and (3) H&M waived any right under the contract with respect to the hiring of Sweezy.

After a two-day trial, the circuit court concluded Champion violated paragraph 12 of the contract by hiring Sweezy and granted judgment for plaintiff. The trial judge concluded that, because actual damages were "incalculable," plaintiff was entitled to $10,000 in liquidated damages under paragraph 12. Subsequently, the judge entertained

plaintiff's motion for attorney fees, awarding $6,300 to plaintiff. This appeal followed.

OPINION

On appeal, defendant first contends the trial court erred in awarding $10,000 in liquidated damages pursuant to paragraph 12 of the agreement because the clause constituted an unenforceable penalty. We agree.

Generally, although a nonbreaching party may recover only damages to the extent of injury, parties may specify a particular sum in liquidation where actual damages would be difficult to ascertain. (*Stride v. 120 West Madison Building Corp.* (1985), 132 Ill. App. 3d 601, 477 N.E.2d 1318.) However, if the purpose of the clause fixing damages is merely to secure a party's performance, it will be treated as a penalty and only actual damages proved can be recovered. (*Scofield v. Tompkins* (1880), 95 Ill. 190.) Where a contract provides that the breaching party must pay all damages caused by the breach as well as a specified sum in addition thereto, the sum so specified can be nothing but security for performance and, therefore, constitutes an unenforceable penalty. See 5 A. Corbin, Contracts §1059 (1964).

Here, paragraph 12 of the contract expressly provided that the $10,000 "liquidated damages" was recoverable in addition to "any and all actual damages" resulting from breach. As such, that clause imposed a clear penalty which cannot be enforced. We therefore vacate the judgment below as it relates to recovery of the liquidated damages amount.

Having determined plaintiff is not entitled to the liquidated amount, we must consider the measure of actual damages.

At trial, Henry Szymanowski, owner and president of H&M, testified concerning damages resulting from Champion's breach of the contract. Szymanowski stated that H&M trained Sweezy for 26 days at a total cost to H&M of $2,210. Szymanowski also testified concerning lost revenues and resulting costs occasioned to H&M by Champion's subsequent hiring of Sweezy.

A document, prepared in anticipation of trial which detailed amounts associated with the above testimony, was admitted into evidence. That exhibit contains computation of the $2,210 worth of costs incurred in Sweezy's training. However, the document included no specific sum of other damages attributable to Champion's hiring of Sweezy, reflecting Szymanowski's testimony that such amounts were not ascertainable.

In his oral ruling at the conclusion of trial, the trial judge stated:

"Secondly, the evidence as to actual damages leaves a lot to be desired. This Court finds that the actual damages, although $2,210.00 was alleged to be ascertained by the Plaintiff, is [*sic*] really incalculable, and the Court is not going to accept a statement prepared just for the purposes of trial. The damages are, indeed, incalculable; and, therefore, the liquidated damages clause will be enforced and [judgment] will be entered against Champion in the sum of $10,000.00."

We find the above ruling ambiguous. Although the court acknowledged plaintiff presented proof as to a portion of the damages amounting to $2,210 for the cost of training Sweezy, the court concluded that actual damages were "really incalculable." We must assume that conclusion was based, at least in part, on further testimony regarding the difficulty in ascertaining damages occasioned by Champion's breach unrelated to training costs. We can conclude that the court awarded the liquidated amount in substitution for proven damages based, in part, on that testimony. What remains unclear is whether the court's conclusion that actual damages were incalculable includes either the determination that the $2,210 amount, in actuality, could not have been ascertained or the determination that that amount was not sufficiently proven. It is axiomatic that, in the absence of a valid liquidated damages clause, incalculable amounts cannot be recovered. Nor may ascertainable damages be recovered where proof is lacking. Therefore, we remand the matter with directions for the court to make a determination, based on the record, as to the amount of actual damages proved, if any, and to enter an order awarding plaintiff that amount. However, if the court determines the evidence insufficient to substantiate any recovery, the court should award plaintiff zero damages.

Champion next contends that the trial court erred in enjoining the hiring of drivers employed by H&M in the future. Defendant argues the evidence did not establish irreparable harm or inadequacy of legal remedy necessary to support injunctive relief. Additionally, Champion contends no basis for an injunction existed, citing evidence establishing the sale, to another venture, of that portion of Champion's enterprise using leased drivers and the fact that Champion stopped using H&M's drivers in December of 1985.

We summarize below testimony pertinent to our disposition of the issue.

Szymanowski testified that H&M began leasing drivers to Champion immediately after the contract was signed. He stated that, although H&M last provided drivers to Champion in December 1985, he had not agreed to terminate the contract either orally or in writing.

Szymanowski stated that H&M was prepared to satisfy Champion's driving requirements, but that after Champion hired Sweezy, the relationship terminated. He testified H&M subsequently hired and trained several drivers to service accounts, explaining Sweezy possessed versatile truck-driving skills and an ability to work on different types of accounts. He further stated that Sweezy was well-liked and was requested back as a driver by many of the accounts for which he drove. Sweezy was directly responsible for attracting business to the company.

On cross-examination, Szymanowski admitted that H&M had no agreement to provide any drivers to Champion other than on an "as needed" basis. He also admitted that the company did not automatically hire a driver to replace a driver who left.

Gerald Tannenbaum, a superintendent at Stone Container Corporation, testified that, in February 1986, that enterprise bought the corrugated division of Champion, which included plants located in Naperville and Joliet, Illinois. In connection with business at the Naperville plant, Champion used temporary drivers in addition to two of its own drivers. Tannenbaum stated that in early February (presumably 1986) he spoke with a woman by the name of Debi at H&M and related Champion's intention to hire Sweezy. Tannenbaum testified that Champion was still in business.

Debi Behnke, former general manager at H&M, testified as an adverse witness that there was a turnover of drivers at H&M. She stated that she has never spoken to Gerald Tannenbaum.

Szymanowski was also called to testify as an adverse witness. He stated that, to the best of his knowledge, H&M did not provide drivers to Champion other than for Champion's Naperville facility.

Based on that evidence, the court found the contract had not been terminated and, because Champion continued to do business notwithstanding sale of the Naperville plant, Champion might require drivers under the contract. The court determined injunctive relief was therefore proper to prevent Champion from hiring H&M's drivers away in future breach.

Somewhat analogous facts were present before the court in *American Food Management, Inc. v. Henson* (1982), 105 Ill. App. 3d 141, 434 N.E.2d 59, a case we find instructive in determining the propriety of injunctive relief in the instant appeal. *American Food* involved a contract between plaintiff, a provider of food services, and defendant, owner of college dormitories, obligating plaintiff to furnish services to those facilities. Relevant here, clauses in the parties' contracts precluded defendant from hiring plaintiff's management employees, for

purposes of providing food service, for the duration of the agreements and for one year thereafter. When one of plaintiff's managers was hired by defendant following termination of his employment, plaintiff filed suit seeking, in part, injunctive relief against defendant employer. Following an evidentiary hearing, the trial court ordered a permanent injunction enjoining defendant from hiring plaintiff's management employees, including the individual manager hired, for the duration of the period as stated in the clause. The appellate court affirmed, noting evidence substantiated the harm occasioned where such provisions were not honored, namely, loss of plaintiff's trained employees as well as loss of service contracts. *American Food,* 105 Ill. App. 3d at 147, 434 N.E.2d at 64.

■ For similar reasons, we conclude the trial court did not abuse its discretion in granting injunctive relief in the matter before us. Here, H&M presented testimony establishing that defendant's hiring of Sweezy resulted in loss to plaintiff of a trained and valued employee as well as anticipated benefits from a healthy continuing business relationship with defendant. Additionally, testimony substantiated that the contract had not been formally terminated as of the time of trial. Thus, injunctive relief was not improper because, as in *American Food,* the operative clause prohibited hirings within one year from the contract's termination. Further, Szymanowski's statement, that to his knowledge, drivers were furnished only to Champion's Naperville facility, did not eliminate the basis for injunctive relief. We agree with the trial court that testimony showed Champion continued as a viable concern and could seek out plaintiff's services under the contract in the future, further observing that plaintiff's services were not limited to providing drivers only for Champion's Naperville plant.

■■ We last consider defendant's contentions that the award of attorney fees was improper. Generally, provisions in contracts for award of attorney fees are an exception to the rule that the unsuccessful litigant in a civil action is not responsible for the payment of the opponent's fees. (See *Abdul-Karim v. First Federal Savings & Loan Association* (1984), 101 Ill. 2d 400, 462 N.E.2d 488.) In considering the amount of fees recoverable under such provisions, this court recently stated:

> "An appropriate fee consists of reasonable charges for reasonable services [citation]; however, to justify a fee, more must be presented than a mere compilation of hours multiplied by a fixed hourly rate or bills issued to the client [citation], since this type of data, without more, does not provide the court with sufficient information as to their reasonableness—a matter which cannot

be determined on the basis of conjecture or on the opinion or conclusions of the attorney seeking the fees [citations]. Rather, the petition for fees must specify the services performed, by whom they were performed, the time expended thereon and the hourly rate charged therefor. [Citation.] Because of the importance of these factors, it is incumbent upon the petitioner to present detailed records maintained during the course of the litigation containing facts and computations upon which the charges are predicated. [Citations.]

Once presented with these facts, the trial court should consider a variety of additional factors such as the skill and standing of the attorneys, the nature of the case, the novelty and/or difficulty of the issues and work involved, the importance of the matter, the degree of responsibility required, the usual and customary charges for comparable services, the benefit to the client [citation], and whether there is a reasonable connection between the fees and the amount involved in the litigation [citations]. Finally, the decision of the trial court will not be reversed absent an abuse of discretion. [Citation.]" *Kaiser v. MEPC American Properties, Inc.* (1987), 164 Ill. App. 3d 978, 983-84, 518 N.E.2d 424, 427-28.

Defendant raises several arguments to support the contention that the award of $6,300 in fees to plaintiff in the instant case was improper. However, we need address here only defendant's argument that the trial court improperly denied Champion an evidentiary hearing on the amount of attorney fees as other points raised by defendant are essentially based on the premise that defendant had not breached the contract.

The record reveals that on July 17, 1987, plaintiff's counsel filed a document labelled "PETITION FOR FEES AND SUPPORTING AF-FIDAVIT." That document consisted of plaintiff's counsel's sworn statement that an attached computer-generated billing memorandum represented the time expended in plaintiff's cause and the hourly rates customarily charged and paid for similar services rendered. The billing memorandum indicated total fees of $6,973.24. On August 10, 1987, Champion filed a response to the petition for fees which challenged the reasonableness of the number of hours and the hourly rates applied in computing the amount of fees. Champion's response also argued that because H&M did not receive an invoice for fees, an inference arose that plaintiff did not incur any legal expense. Subsequently, Champion filed a notice pursuant to Supreme Court Rule 237(b) (107 Ill. 2d R. 237(b)) requesting H&M to produce, at the scheduled hearing on the

matter of fees, various documents related to fees paid by H&M or which were billed to H&M but remained unpaid. Plaintiff filed a reply to Champion's response. Hearing on the petition for fees was conducted on September 15, 1987.

At the beginning of the hearing, the court noted plaintiff had reduced the total amount of fees to $6,463.24, but that Champion contested that amount. After unsuccessfully attempting to settle the matter, the court heard argument on the petition. During the hearing, Champion's counsel pointed out that the contract for award of attorney fees was in the nature of an indemnity agreement to reimburse for monies actually expended by H&M and that plaintiff's counsel's petition and attached billing memorandum did not conclusively establish that any amount had, in fact, been billed to H&M. As to the issue of computation of the fee amount, defendant's counsel initially challenged the reasonableness of the hourly rate, given the total amount at stake in the matter but, later in the hearing, conceded that the hourly rate was reasonable in the community and stated that counsel contested only the number of hours contained in the billing memorandum. Following argument, the court stated that plaintiff was entitled to the $6,463.24 amount based on plaintiff's counsel's petition and billing memorandum, noting that defendant's counsel filed no counteraffidavit. When defendant's counsel indicated he desired a hearing for purposes of eliciting whether, in fact, H&M had been billed for services, the court stated its intention to rule on the basis of the pleadings. The judge then ruled plaintiff was entitled to $6,300 in total fees.

We must conclude that that award constituted an abuse of discretion. We initially note that the billing memorandum attached to plaintiff's petition for fees consists of general descriptions of services rendered by plaintiff's counsel, including dates when the work was performed, who performed the work, how much time was expended for each activity, and the rate charged. However, the memorandum does not indicate that any amount was, in fact, due and owing by plaintiff for those services. The memorandum indicates that the total of $6,973.24 reflects the amount of "Unbilled Services" rendered. The memorandum shows $0 amounts for "Invoices confirmed but not paid" and "Invoices printed but not confirmed," as well as for "Fee billing." Further, plaintiff's counsel's affidavit artfully evades stating that plaintiff had been charged any amount for services rendered. The affidavit states only that the billing memorandum was in a form customarily used by plaintiff's counsel, that it accurately reflected the time expended by counsel on the case, that the hourly rates represented those customarily charged and paid by the firm's clients for the type of ser-

vices rendered, and that those rates were customarily charged by attorneys in the Chicago area for similar services.

Thus, the court could not have properly concluded on the basis of the petition and attached billing memorandum, even though plaintiff's counsel's affidavit stood uncontradicted, that plaintiff had actually incurred any costs of representation such as would justify fees under the language of paragraph 12 of the contract.

Moreover, review of the transcript of the hearing on fees indicates the trial judge arrived at the amount of $6,300 without considering any factors outside of the documents before him such as this court, in *Kaiser*, has considered to be important to the determination of whether the amount of the award is reasonable. Indeed, the transcript reveals no reason why the amount of $6,300 should have been awarded over the amount of $6,946.24, as indicated in the petition, or $6,463.24, as reduced by plaintiff's counsel.

We therefore vacate the award of attorney fees in the amount of $6,300 and remand the matter for further proceedings to determine the amount of fees recoverable in accordance with the considerations stated in *Kaiser*.

Affirmed in part; vacated in part and remanded with directions.

MURRAY, P.J., and PINCHAM, J., concur.