**David J. FREUND, Plaintiff–Appellant,**

**v.**

**E.D. & F. MAN INTERNATIONAL, INC., Defendant–Appellee.**

No. 99–1627.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 3, 1999.

Decided Dec. 2, 1999.

William J. Bolotin (argued), Doyle & Bolotin, Chicago, IL, for plaintiff-appellant.

Howard J. Stein (argued), Chicago, IL, for defendant-appellee.

Before POSNER, Chief Judge, and COFFEY and ROVNER, Circuit Judges.

POSNER, Chief Judge.

This diversity suit for breach of contract was resolved against the plaintiff, David Freund, after a bench trial. The ground of the decision was that the key contractual provision on which Freund was suing was contrary to the common law of Illinois. The contract provides that it shall be interpreted in accordance with Illinois law and the parties agree, at least tacitly (and that's good enough), that Illinois law governs the enforceability as well as interpretation of the contract.

Freund is a commodities broker who in 1990 entered into a contract with Index Futures Group, Inc., a brokerage firm, to become an employee of Index and create a "Freund Division" within the firm—or rather continue it, since he had had a "Freund Division" in the previous brokerage firm that he had worked for. The contract, which either party could terminate on 30 days' notice, provided for a splitting of the brokerage fees paid by customers served by the Freund Division between the Division (meaning Freund) and Index. The following clause is the focus of the lawsuit: "All personnel hired by Freund will remain in the division until termination. Said personnel will not be

offered or given employment with Index or its affiliates without prior approval by Freund. This provision will remain in effect until one year after Index and Freund part company."

Freund had brought with him to Index several brokers, including Walter and Mueller, and they became employees of Index. In 1996 Index sold its business to the defendant, Man, and the district court held that the sale included an assumption by Man of Index's contract with Freund. So Freund and the other brokers in the Freund Division became employees of Man. The following year, however, Man terminated Freund's employment contract after the required 30 days' notice, but retained Walter and Mueller in violation of the contractual provision that we quoted. Freund seeks damages for that violation.

■ The provision is a variant of an employee covenant not to compete. Instead of the employees' being the promisors, they were not parties to the contract that restricted their employment opportunities. The contractual promise was made by Index and assumed by Man, and it was a promise not to hire (more precisely, not to retain) rather than not to be hired. Illinois law is suspicious of employee covenants not to compete. E.g., *Prairie Eye Center, Ltd. v. Butler*, 305 Ill.App.3d 442, 239 Ill.Dec. 79, 713 N.E.2d 610, 613 (1999); *Springfield Rare Coin Galleries, Inc. v. Mileham*, 250 Ill.App.3d 922, 189 Ill.Dec. 511, 620 N.E.2d 479, 485 (1993); *Curtis 1000, Inc. v. Suess*, 24 F.3d 941 (7th Cir. 1994) (Illinois law). But the district judge made no finding on whether, had Walter and Mueller promised not to work for Index—or for Man, which the judge held had stepped into Index's shoes in the contract—if Freund were fired, an Illinois court would have enforced the promise. The judge thought that in any event such a court would not enforce a promise that had not been made by, or at least known to, the employees affected by it.

At first glance it may seem bizarre indeed to seek to hold a person to a contract to which he was not a party and of which he had no knowledge. For not only did neither Walter nor Mueller sign a covenant not to remain with Index or its successor should Freund leave; they didn't know about the provision disabling them from remaining with the firm without Freund's consent. But neither Walter nor Mueller is a defendant. Freund is not seeking to "hold" them to this contractual provision to which they were not parties and of which they were not even aware. It is true that if he wins this suit the decision will be a precedent the practical effect of which will be to bind any future Walters and Muellers much as if they were defendants; but that is also a possible effect of legal doctrines that no one would question. Suppose another brokerage firm had induced Freund to break his contract with Index and bring his group with him to that firm, and Index had sued Freund for breach of contract and the firm for intentional interference with contract. *Lawrence & Allen, Inc. v. Cambridge Human Resource Group, Inc.*, 292 Ill.App.3d 131, 226 Ill.Dec. 331, 685 N.E.2d 434 (1997); *Hi–Tek Consulting Services, Inc. v. Bar–Nahum*, 218 Ill.App.3d 836, 161 Ill.Dec. 347, 578 N.E.2d 993 (1991); *Stiepleman Coverage Corp. v. Raifman*, 258 A.D.2d 515, 685 N.Y.S.2d 283 (1999) (per curiam); see also *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill.2d 145, 137 Ill.Dec. 19, 545 N.E.2d 672, 676 (1989). The threat of such a suit would deter such a breach and by doing so would limit the practical employment opportunities of the other members of the Freund Division, such as Walter and Mueller; yet it would be a conventional tort suit.

■ Coming even closer to home, we find cases in which Illinois courts have enforced contracts in which one firm agrees not to "steal" the employees of another. *H & M Driver Leasing Services, Unlimited, Inc. v. Champion Int'l Corp.*, 181 Ill.App.3d 28, 129 Ill.Dec. 808, 536 N.E.2d 858, 861–62 (1989); *American*

*Food Management, Inc. v. Henson,* 105 Ill.App.3d 141, 61 Ill.Dec. 122, 434 N.E.2d 59, 64 (1982); *Kocjancich v. Bridges,* 93 Ill.App.3d 550, 49 Ill.Dec. 4, 417 N.E.2d 694, 698 (1981). In no case was the validity of the contract squarely in issue, but in both *American Food Management* and *H & M Driver Leasing Services* the court, in upholding the propriety of injunctive relief, clearly indicated its belief that the contract served a valid purpose. See also *Therapy Services, Inc. v. Crystal City Nursing Center, Inc.,* 239 Va. 385, 389 S.E.2d 710 (1990). We infer that under Illinois law an employer who has made a substantial enough investment in the human capital of its employees to enforce a covenant by his employees not to compete with him (for a reasonable time and within a reasonable geographical and product space) can also enforce a promise by another employer not to hire away these employees, provided the contract does not unreasonably restrain competition between the two employers, as found or alleged in such cases as *Roman v. Cessna Aircraft Co.,* 55 F.3d 542 (10th Cir.1995); *Nichols v. Spencer Int'l Press, Inc.,* 371 F.2d 332, 335–37 (7th Cir.1967); *Communication Technical Systems, Inc. v. Densmore,* 583 N.W.2d 125 (1998), and *Defco, Inc. v. Decatur Cylinder, Inc.,* 595 So.2d 1329 (Ala.1992).

■ But this case is different both because it required the employees to be fired rather than just foreclosed from alternative employment, and being fired is usually a greater hardship than not being hired, and because the employees were not employees of the covenantee, Freund. They were employees of Index, and later of Man. The situation was thus that one employee obtained a contract whereby fellow employees would lose their jobs if he lost his. It was the commercial equivalent of the discredited Hindu practice of suttee, whereby the widow is required to immolate herself on her husband's funeral bier. If Freund went, Walter and Mueller had to go too. And unlike the case of suttee, Walter and Mueller were not aware that they were "married" to Freund.

■ It is true that since they were employees at will they had no "right" to continued employment, and so the contractual provision in issue did not infringe their rights. Still, such provisions are sufficiently unusual that neither Walter nor Mueller would reasonably foresee such an impediment to their remaining with their employer. Given the hostility of Illinois courts to employee covenants not to compete, it strikes us as unlikely that such a court would enforce a covenant not to compete that the employees who would lose their job because of it had no knowledge of or reason to suspect—unless the promisee came up with a better reason for this unusual arrangement than anything that Freund has offered. Although the covenant was not onerous in scope and time (compare *Lawrence & Allen, Inc. v. Cambridge Human Resource Group, Inc.,* supra, 226 Ill.Dec. 331, 685 N.E.2d at 441–43)—only one potential employer was excluded, and for only one year—scope and duration are not the only factors that the Illinois courts consider in deciding whether to enforce a covenant not to compete. Others include the purpose and business justification of the restraint. See, e.g., *id.* at 440–445; *Woodfield Group, Inc. v. De-Lisle,* 295 Ill.App.3d 935, 230 Ill.Dec. 335, 693 N.E.2d 464, 466–67 (1998). And we have no doubt that they would weigh the fact that this covenant requires the employee to be fired in deciding whether it was justified.

Yet we can imagine a valid purpose. If the Freund Division was essentially an independent business in 1990 when Freund joined Index Futures Group, then Freund would have wanted to capture its value ("goodwill") in a lump sum; but to induce Freund to keep working (this was a personal-services business, after all), Index would have preferred to pay out the value over a period of years, perhaps as an unusually large salary for Freund, so that he didn't just take the lump sum and run.

But this scheme of deferred compensation created a strategic opportunity for Index and Man: woo away the business of the Freund Division (that is, redirect the customers' loyalty), then fire Freund and so avoid having to pay the deferred component of the payment for the 1990 acquisition of the Freund Division. One way to make that strategic conduct unattractive to Index in the initial contract would be to require Index or its successor to divest itself of the entire business of the Freund Division if it fired Freund, and the only practical way of doing that was to require Index or its successor to get rid of the employees who were handling the customers of the Freund Division—who *were* (with Freund) the Freund Division. But this theory of why the challenged clause was included in the initial contract is not argued; nor does it explain why the employees affected by it had to be kept in the dark. It would have been simple enough to condition the contract between Freund and Index on the affected employees' signing the noncompete provision. On this record, the concealment of the provision from the employees was gratuitous, and a gratuitous interference with employment is unenforceable in Illinois.

We are supported in this conclusion by *Szabo Food Service, Inc. v. County of Cook*, 160 Ill.App.3d 845, 112 Ill.Dec. 266, 513 N.E.2d 875, 877 (1987), which refused to enforce a promise by one firm to another not to deal with a third firm's employees whom the third firm had "stolen" from the second. The court distinguished *American Food Management* as a case in which the plaintiff was trying to restrict the actions of persons with whom it had a contractual relation; Freund, in parallel with Szabo, had no contract with Walter or Mueller.

AFFIRMED.